**Nos. 13-1678, 14-1014**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

———————

JAPANESE FOUNDATION FOR CANCER RESEARCH,

Plaintiff-Cross-Appellant,

v.

MICHELLE K. LEE, Deputy Undersecretary of Commerce for Intellectual Property and Deputy Director of the U.S. Patent and Trademark Office; UNITED STATES PATENT AND TRADEMARK OFFICE,

Defendants-Appellants,

———————

On Appeal from the United States District Court for the
Eastern District of Virginia in Case No. 13-cv-412 (Judge Anthony J. Trenga)

———————

## BRIEF FOR THE APPELLANTS

———————

NATHAN K. KELLEY
  *Solicitor*

BENJAMIN T. HICKMAN
JEREMIAH S. HELM
  *Associate Solicitors*
  *Office of the Solicitor*
  *U.S. Patent and Trademark Office*
  *P.O. Box 1450*
  *Alexandria, VA 22313*

STUART F. DELERY
  *Assistant Attorney General*

DANA J. BOENTE
  *Acting United States Attorney*

MARK R. FREEMAN
ADAM C. JED
  *(202) 514-8280*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7240*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C. 20530*

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES

STATEMENT OF JURISDICTION ..............................................................1

STATEMENT OF ISSUE ..........................................................................2

STATEMENT OF THE CASE......................................................................2

A.  Overview ....................................................................................2

B.  Statutory and Regulatory Background........................................4

C.  Factual Background and Administrative Proceedings ...............5

    1.  The Terminal Disclaimer..................................................5

    2.  JFCR's Request to Withdraw the Terminal Disclaimer ............6

    3.  JFCR's Requests for Reconsideration.............................8

    4.  The PTO's Decision Denying Reconsideration.........................10

D.  District Court Proceedings.........................................................12

SUMMARY OF ARGUMENT....................................................................16

STANDARD OF REVIEW ........................................................................19

ARGUMENT ...........................................................................................19

A.  The PTO Had Ample Basis For Declining to Rescind Plaintiff's
Terminal Disclaimer....................................................................20

B.  The District Court Erred By Requiring the PTO to Withdraw the
Disclaimer Absent Proof of Actual Authorization ..................29

CONCLUSION ........................................................................................36

CERTIFICATE OF COMPLIANCE WITH
FEDERAL RULE OF APPELLATE PROCEDURE 32(A)

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:** **Page**

*Ala. Aircraft Indus. v. United States,*
    586 F.3d 1372 (Fed. Cir. 2009) .......................................................30

*Bayer AG v. Carlsbad Tech., Inc.,*
    298 F.3d 1377 (Fed. Cir. 2002) .......................................................20

*Bettcher Indus. v. Bunzl USA, Inc.,*
    661 F.3d 629 (Fed. Cir. 2011) .........................................................19

*Carnegie Mellon Univ. v. Schwartz,*
    105 F.3d 863 (3d Cir. 1997) ............................................................21

*Clark v. City of Zebulon,*
    156 F.R.D. 684 (N.D. Ga. 1993) .....................................................34

*Cooper Techs. Co. v. Dudas,*
    536 F.3d 1330 (Fed. Cir. 2008) .......................................................19

*Environmentel, LLC v. FCC,*
    661 F.3d 80 (D.C. Cir. 2011) ..........................................................26

*FCC v. Fox Television Stations, Inc.,*
    556 U.S. 502 (2009) ........................................................................22

*FCC v. Pottsville Broad. Co.,*
    309 U.S. 134 (1940) ........................................................................30

*FCC v. Schreiber,*
    381 U.S. 279 (1965) ........................................................................30

*Fennel v. TLB Kent Co.,*
    865 F.2d 498 (2d Cir. 1989) ............................................................34

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
    535 U.S. 722 (2002) ........................................................................25

*Huston v. Ladner,*
   973 F.2d 1564 (Fed. Cir. 1992) ................................................... 24, 33

*In re Yamazaki,*
   702 F.3d 1327 (Fed. Cir. 2012) ................................................... 21, 28

*INS v. Ventura,*
   537 U.S. 12 (2002) ...................................................................... 30, 32

*Irwin v. Dep't of Veterans Affairs,*
   498 U.S. 89 (1990) ............................................................................ 23

*Lacavera v. Dudas,*
   441 F.3d 1380  (Fed. Cir. 2006) ....................................................... 19

*Link v. Wabash, R.R.,*
   370 U.S. 626 (1962) ........................................................ 23, 24, 26, 27

*Merck & Co., Inc. v. Hi-Tech Pharmacal Co., Inc.,*
   482 F.3d 1317 (Fed. Cir. 2007) ........................................................ 20

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
   463 U.S. 29 (1983) ..................................................................... 22, 30

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife,*
   551 U.S. 644 (2007) .......................................................................... 22

*Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs,*
   669 F.3d 1340, 1348 (Fed. Cir. 2012) .............................................. 23

*New York v. Nuclear Regulatory Comm'n,*
   589 F.3d 551 (2d Cir. 2009) ............................................................. 23

*Norton v. So. Utah Wilderness Alliance,*
   542 U.S. 55 (2004) ............................................................................ 30

*Pension Benefit Guar. Corp. v. LTV Corp.,*
   496 U.S. 633 (1990) .......................................................................... 30

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005) (en banc) ........................................ 25

iv

*Singhal v. Mentor Graphics Corp.*,
 328 F. App'x 648 (Fed. Cir. 2009) ................................................27

*Super Sack Mfg. Corp. v. Chase Pckg. Corp.*,
 57 F.3d 1054 (Fed. Cir. 1995) ............................................... 24, 34

*Universal Film Exchanges, Inc. v. Lust*,
 479 F.2d 573 (4th Cir. 1973) ................................................27

*Vectra Fitness, Inc. v. TNWK Corp.*,
 162 F.3d 1379 (Fed. Cir. 1998) ....................11, 20, 21, 22, 28, 35, 36

*Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*,
 435 U.S. 519 (1978) ................................................30

*Whitaker v. MSPB*,
 784 F.2d 1109 (Fed. Cir. 1986) ................................................24

**Statutes:**

5 U.S.C. §§ 701-706 ................................................1

28 U.S.C. § 1295(a)(1) ................................................1

28 U.S.C. § 1331 ................................................1

28 U.S.C. § 1338(a) ................................................1

28 U.S.C. § 1361 ................................................1

28 U.S.C. §§ 2201-2202 ................................................1

28 U.S.C. § 2107(b) ................................................1

35 U.S.C. § 2(b)(2)(A) ............................................... 4, 32, 33

35 U.S.C. § 2(b)(2)(D) ............................................... 4, 32, 33

35 U.S.C. § 154................................................4

35 U.S.C. § 251 ............................................................................ 10, 21

35 U.S.C. § 253 ........................................ 2, 3, 5, 6, 11, 16, 20, 21

35 U.S.C. § 255 ........................................................ 11, 12, 20, 21

**Regulations:**

37 C.F.R. § 1.182 ....................................................................6, 10, 31

37 C.F.R. § 1.183 .....................................................................10, 31

37 C.F.R. § 1.31 ..................................................................................4

37 C.F.R. § 1.321 ...........................................................................5, 33

37 C.F.R. § 1.321(a)(1) .............................................................5, 17, 24

37 C.F.R. § 1.321(b)(1) .....................................................................5

37 C.F.R. § 1.33(a) .............................................................................4

37 C.F.R. § 1.33(b) .............................................................................4

37 C.F.R. § 1.34 ...............................................................4, 17, 24, 25, 33

**Rules:**

Fed. R. App. P. 4(a)(1)(B) ...............................................................1

Fed. R. App. P. 4(a)(3) .......................................................................2

**Other Authorities:**

http://www.uspto.gov/web/offices/ac/ido/oeip/taf/us_stat.htm
(last visited Jan. 23, 2013) ...................................................25

https://oedci.uspto.gov/OEDCI/ (last visited Jan. 23, 2014) .......................25

PTO Manual of Patent Examining Procedure § 1490..........................................................7

## STATEMENT OF RELATED CASES

We are not aware of any related cases.

Nos. 13-1678, 14-1014

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

JAPANESE FOUNDATION FOR CANCER RESEARCH,

Plaintiff-Cross-Appellant,

v.

MICHELLE K. LEE, Deputy Undersecretary of Commerce for Intellectual Property
and Deputy Director of the U.S. Patent and Trademark Office; UNITED STATES
PATENT AND TRADEMARK OFFICE,

Defendants-Appellants,

On Appeal from the United States District Court for the
Eastern District of Virginia in Case No. 13-cv-412 (Judge Anthony J. Trenga)

**BRIEF FOR THE APPELLANT**

**STATEMENT OF JURISDICTION**

Plaintiff invoked the district court's jurisdiction pursuant to 5 U.S.C. §§ 701-

706 and 28 U.S.C. §§ 1331, 1338(a), 1361, 2201-2202. A 1008. The district court

entered a final judgment on July 26, 2013. A 23-24. The government filed a timely

notice of appeal on September 20, 2013. A 1035-37; see 28 U.S.C. § 2107(b); Fed. R.

App. P. 4(a)(1)(B). Plaintiff filed a timely notice of cross-appeal on October 4, 2013.

A 1038-40; see Fed. R. App. P. 4(a)(3).  This Court has jurisdiction pursuant to 28

U.S.C. § 1295(a)(1).

## STATEMENT OF ISSUE

Plaintiff's attorney of record filed a terminal disclaimer surrendering the

remaining term of plaintiff's patent.  The disclaimer was filed in the appropriate form

under United States Patent and Trademark Office (PTO) rules and was accompanied

by the prescribed fee.  The PTO therefore accepted the disclaimer, which became

"part of the original patent," and the patent expired.  35 U.S.C. § 253.  Months later,

plaintiff asked the PTO to withdraw the terminal disclaimer, alleging that its attorney

of record had been mistaken to file it.

The question presented by this appeal is whether the PTO's refusal to

withdraw the terminal disclaimer was arbitrary or capricious.

## STATEMENT OF THE CASE

**A.     Overview**

This is a civil action under the Administrative Procedure Act (APA).  Plaintiff

is the Japanese Foundation for Cancer Research (JFCR), which was the owner of U.S

Patent No. 6,194,187 (the '187 patent).  The '187 patent claimed an "apoptosis-

inducing protein and gene encoding the same."  A 31.  JFCR seeks to compel the

PTO to withdraw a recorded terminal disclaimer of the '187 patent and restore to

JFCR the remaining term of the patent as granted.

2

In October 2011, JFCR's counsel of record in the PTO filed a terminal disclaimer under 35 U.S.C. § 253 surrendering the entire remaining term of the '187 patent. The disclaimer was in the form prescribed by PTO regulations and accompanied by the prescribed fee, and electronic PTO records indicate that the agency received the disclaimer on the day it was filed. PTO accordingly recorded the disclaimer. A 894-99. The disclaimer thus became "part of the original patent," see 35 U.S.C. § 253, and the '187 patent expired.

Months later, however, JFCR—acting through the same counsel—asked PTO to withdraw the disclaimer. A 900-02. At first, JFCR simply asked to withdraw the disclaimer, and the PTO denied the request. JFCR then asked the PTO to reconsider, alleging for the first time that JFCR's counsel of record had been mistaken to file the terminal disclaimer at all. The PTO denied the request, explaining, *inter alia*, that the terminal disclaimer had been duly recorded (and was therefore available for public inspection in the application file). PTO also explained that patentees are bound by agency filings made by their attorneys of record and that the agency is not the proper forum for resolving whether there were miscommunications between parties and their attorneys. A 998-1000.

JFCR then filed this civil action to set aside the PTO's decision, urging that the agency was required to withdraw the terminal disclaimer because JFCR's counsel of record allegedly made a mistake. A 1032-33. The district court agreed and ordered

3

the agency "to withdraw the disclaimer . . . absent a finding that [JFCR] actually authorized its filing." A 3, 21, 24. This appeal followed.

**B.    Statutory and Regulatory Background**

The PTO has established policies and rules governing when and how attorneys may proceed on the behalf of clients before the agency. Congress expressly authorized the PTO to promulgate regulations governing "the conduct of proceedings in the Office" and "the recognition and conduct of agents, attorneys, or other persons representing applicants or other parties before the Office." 35 U.S.C. § 2(b)(2)(A) and (D). Pursuant to that authority, the PTO has specified, for example, that a patent applicant may prosecute his own application, or may designate a registered patent attorney or agent to act on his behalf. 37 C.F.R. § 1.31. PTO rules further provide that "[a]mendments and other papers" filed with the agency may be signed by the patent attorney, and that the PTO will not "engage in double correspondence" with both the applicant and his attorney. 37 C.F.R. § 1.33(a) and (b).

PTO rules expressly provide that a patent attorney's signature on a filing "shall constitute a representation to the United States Patent and Trademark Office that under the provisions of this subchapter and the law, he or she is authorized to represent the particular party on whose behalf he or she acts." 37 C.F.R. § 1.34.

Although the term of a patent is generally twenty years from the filing date of the application, see 35 U.S.C. § 154, the Patent Act permits a patentee to "make disclaimer of any complete claim" and to "disclaim or dedicate to the public the entire

4

term, or any terminal part of the term, of the patent granted or to be granted." 35

U.S.C. § 253.[1] The statute provides that "[s]uch disclaimer shall be in writing, and

recorded in the Patent and Trademark Office; and it shall thereafter be considered as

part of the original patent to the extent of the interest possessed by the disclaimant

and by those claiming under him." *Ibid.*

The PTO's regulations establish rules governing the filing of terminal

disclaimers. 37 C.F.R. § 1.321. Among other things, those rules specify who may sign

a disclaimer. If the disclaimer relates to an already-issued patent, it may "[b]e signed

by the patentee, or an attorney or agent of record." 37 C.F.R. § 1.321(a)(1). If it

relates to a pending patent application, it may "[b]e signed by the applicant or an

attorney or agent of record." 37 C.F.R. § 1.321(b)(1).

## C. Factual Background and Administrative Proceedings

### 1. The Terminal Disclaimer

JFCR was the owner and assignee of the '187 patent. The '187 patent issued in

2001 and, absent a terminal disclaimer, would have expired in April 2017. The patent

was prosecuted before the PTO by a patent attorney at Foley & Lardner LLP. See,

*e.g.*, A 69, 72, 198, 199, 201, 262, 263, 264, 270, 427, 429, 430, 432, 541, 547, 580, 593,

743, 888, 893. The same attorney continues to be "[t]he . . . attorney of record acting

---

[1] The Leahy-Smith America Invents Act of 2011 altered the paragraph
designations in Section 253 and made certain minor amendments not relevant here.

in this matter on behalf of [JFCR]," A 938, 959. That attorney signed the relevant documents submitted to the PTO in this case on JFCR's behalf. See, *e.g.*, A 894-95 (terminal disclaimer); A 900-02 (request to withdraw terminal disclaimer); A 930-32 (request to withhold from publication terminal disclaimer); A 933-59 (request for reconsideration and request to suspend the rules); A 976-90 (supplemental petition for reconsideration).

On October 11, 2011, JFCR's attorney of record filed a terminal disclaimer of the '187 patent and paid the associated filing fee. A 894-99. The disclaimer stated that JFCR, "through its duly-delegated representative, hereby disclaims" the entire remaining patent term. A 894. The disclaimer was in the form prescribed by PTO regulations, and electronic PTO records indicate that the agency received the disclaimer on the day it was filed. PTO accepted and recorded the disclaimer. Accordingly, the disclaimer became "part of the original patent," and the patent expired. 35 U.S.C. § 253.

### 2. JFCR's Request to Withdraw the Terminal Disclaimer

Two months later, in December 2011, JFCR—acting through the same attorney—filed a request to withdraw the disclaimer. A 900-02. JFCR's motion acknowledged that there is no express statutory authority or regulatory procedure for withdrawing a recorded terminal disclaimer. A 901. JFCR nevertheless asked the PTO to exercise its discretion under 37 C.F.R. § 1.182, which provides: "All situations not specifically provided for in the regulations of this part will be decided in

accordance with the merits of each situation by or under the authority of the Director, subject to such other requirements as may be imposed, and such decision will be communicated to the interested parties in writing." See A 900-02.

JFCR's request observed that, when a patent applicant files a terminal disclaimer with respect to a still-pending patent application (as opposed to an issued patent), the PTO has stated that it may allow the applicant to withdraw the disclaimer before the patent issues in "appropriate circumstances [and] consistent with the orderly administration of the examination process." A 901-02 (citing, *inter alia*, PTO Manual of Patent Examining Procedure § 1490) (internal quotation marks omitted). In such circumstances, the public cannot have relied on the terminal disclaimer because the patent has not yet issued. JFCR acknowledged that, in this case, the '187 patent had already issued and the terminal disclaimer had been filed and recorded. JFCR posited, however, that the public was unlikely to have relied on the disclaimer because the PTO had not yet published the disclaimer in the Official Gazette. A 900, 902. On this ground, JFCR asked the PTO to exercise its discretion to withdraw the disclaimer. JFCR did not suggest that the terminal disclaimer had been filed by mistake or without JFCR's approval, nor did it offer any additional reason for nullifying the recorded disclaimer.

In January 2012, the PTO denied the request. A 928-29. The agency observed that a "proper statutory disclaimer" had been filed by JFCR's attorney of record. *Ibid.* The agency explained that that there is no statutory mechanism "to withdraw or

otherwise nullify the effect of a recorded terminal disclaimer." A 929. And in any event, the PTO explained, the agency has a "well-established" policy that it "will not grant a request to withdraw or amend a recorded terminal disclaimer in an issued patent." *Ibid*. The PTO reasoned that "[t]he Terminal Disclaimer filed October 11, 2011 became part of the record on filing on October 11, 2011," and emphasized that, as a matter of public policy, inventions that have been given to the public should not be returned to the prior patent owner. *Ibid*.

### 3. JFCR's Requests for Reconsideration

In February 2012, JFCR filed a short petition asking PTO not to publish the disclaimer in its Official Gazette while JFCR considered "reconsideration and other possible processes." A 930. The filing stated in passing that the disclaimer had been filed in error but did not offer any further explanation. A 930-31.

In March 2012—now five months after filing the terminal disclaimer—JFCR (acting through the same attorney of record) filed a request for reconsideration or, in the alternative, a petition "to invoke the discretion of the Director and suspend the rules." A 933-59 (capitalization removed). In that request, JFCR represented that the terminal disclaimer had been filed by its attorney of record by mistake. The request described a series of events, which it stated JFCR's counsel of record did not learn about "until after" he filed JFCR's first request to withdraw the disclaimer and the PTO had denied the request. A 936, 937; accord A 941.

JFCR asserted that, in a conversation of which there "is no written record," one of its patent licensees had contacted a Japanese law firm for advice about the process of filing terminal disclaimers in the United States. A 939. JFCR alleged that the Japanese firm had misunderstood that inquiry as a request to file a disclaimer for the '187 patent and that, without checking with JFCR, the Japanese firm sent a fax to JFCR's counsel of record instructing him to file a terminal disclaimer. A 940. The copy of that fax in the record indicates only that the Japanese firm asked for "the necessary forms and/or information for the procedure of positive abandonment." See A 967. In any event, six months later, JFCR's attorney of record filed the terminal disclaimer of the '187 patent. A 939-40.

JFCR's request did not attempt to explain that six-month delay or why its attorney of record would have filed a terminal disclaimer based on this fax from a foreign law firm (see A 967) without checking with JFCR itself. Nor did JFCR's request explain why JFCR waited until five months after the terminal disclaimer was filed before suggesting that the disclaimer had been filed by mistake. Nor did the request explain why JFCR allegedly failed to tell its attorney of record about the chain of events before the attorney filed JFCR's first request to withdraw the disclaimer.

In urging PTO to relieve it of its attorneys' error, JFCR acknowledged that "the statute does not specify an explicit remedial path for such situations" and that there is no "explicit administrative mechanism" to correct an erroneously filed disclaimer. A 944. JFCR urged, however, that the PTO was not "prohibited by the statute" from

9

granting the relief that it sought, arguing that the PTO's general regulations governing exercises of discretion by the Director, 37 C.F.R. §§ 1.182 and 1.183, would permit the Director to grant the motion. A 944, 953.[2] JFCR argued that, because the disclaimer had not been published in the Official Gazette, the public was unlikely to have relied on it. A 951-52. And JFCR contended that restoring the remaining term of the '187 patent would "advance[] [the] policy goal[]" of protecting "rights of patentees." A 952.

While JFCR's request was pending, it filed a supplemental request for reconsideration, reiterating its contention that the PTO had the authority to nullify a recorded terminal disclaimer. A 976-90.

### 4. The PTO's Decision Denying Reconsideration

In February 2013, the PTO issued a final decision denying JFCR's requests for reconsideration and refusing to withdraw or cancel the terminal disclaimer. A 991-1001. The PTO gave several reasons for its decision. First, the agency expressed grave doubt that it had the statutory authority to correct a patentee's error in filing a

---

[2] See 37 C.F.R. § 1.182 ("All situations not specifically provided for in the regulations of this part will be decided in accordance with the merits of each situation by or under the authority of the Director, subject to such other requirements as may be imposed, and such decision will be communicated to the interested parties in writing."); 37 C.F.R. § 1.183 ("In an extraordinary situation, when justice requires, any requirement of the regulations in this part which is not a requirement of the statutes may be suspended or waived by the Director or the Director's designee, sua sponte, or on petition of the interested party, subject to such other requirements as may be imposed.").

terminal disclaimer, explaining that neither 35 U.S.C. § 251, which governs reissue of a patent, nor 35 U.S.C. § 253, which governs terminal disclaimers, nor 35 U.S.C. § 255, which authorizes the correction of mistakes "of a clerical or typographical nature, or of minor character," expressly authorized the agency to take such a step. A 994-97. The PTO explained that this was not a case in which, for example, "the numbers for the patent being disclaimed . . . were inadvertently transposed," or in which the alleged error involved some similar "inadvertency [that] is clear from the record." A 996 n.4.   Outside of such circumstances, PTO observed, it was unclear on what basis the agency could properly withdraw a facially valid terminal disclaimer, reasoning that to do so would "require reexamination of the circumstances under which it was filed," A 995 (internal quotation marks omitted).

The PTO explained the agency does not purport to evaluate a patentee's reasons for filing a terminal disclaimer, nor does it exercise any discretion in deciding whether to accept such disclaimers.  A 997; accord A 998.  See *Vectra Fitness, Inc.* v. *TNWK Corp.*, 162 F.3d 1379, 1382 (Fed. Cir. 1998) ("[N]othing in the statutes or regulations requires any action by the PTO for a disclaimer to be 'recorded.'").  Here, the PTO continued, because the terminal disclaimer at issue was "filed by a proper party and include[d] the required fee," the agency "accepted the disclaimer for recording as requested." *Ibid.*

In any event, the PTO explained, even if it had the discretion to nullify a disclaimer, it would not do so in the circumstances here.  A 998-1000.  The agency

11

emphasized that, "upon filing, a proper disclaimer is of record," and consequently "the public has the opportunity to rely on the disclaimer." A 998. Although not yet published in the Official Gazette, JFCR's disclaimer of the '187 patent had been duly recorded and was available for public inspection in the application file. *Ibid.* The agency explained that it will "not determine on an *ad hoc* basis whether the public has actually relied on such filing." *Ibid.* And even if it was unlikely that any member of the public had actually relied on the disclaimer, the PTO reasoned, public policy disfavored restoring to the patentee rights that had been dedicated to the public. See A 999-1000.

Moreover, the PTO explained, "the Office has held that miscommunications between attorneys and clients do not excuse the actions of the representative." A 999. The PTO "has long maintained that an applicant/patentee is bound by the actions or inactions" of its attorney. *Ibid.* The agency stated that PTO proceedings are "not the proper forum for resolving the issue of whether the disclaimer was filed per the intentions of the patentee," *ibid.*, and explained that it is not in a position to, and thus does not, "question [a patentee's] purpose . . . or intention in filing of a disclaimer in an issued patent." A 998.

## D. District Court Proceedings

JFCR then filed this APA action in the United States District Court for the Eastern District of Virginia. Its complaint urged that the PTO was required, as a matter of law, to grant JFCR's request for reconsideration and either nullify the

12

disclaimer under 35 U.S.C. § 255, which authorizes the correction of mistakes "of a clerical or typographical nature, or of minor character," or to invoke some form of inherent, discretionary authority to withdraw the terminal disclaimer filed by JFCR's counsel. A 1032-33.

In July 2013, the district court granted summary judgment for JFCR, set aside the PTO's decision, and remanded to the agency with instructions "to withdraw the disclaimer . . . absent a finding that [JFCR] actually authorized its filing." A 3, 21, 24. See generally A 1-22 (district court decision).

The district court agreed with the PTO that "neither Section 253 nor 255, separately or when read together, explicitly authorize[s] the PTO to withdraw [an] unauthorized disclaimer." A 15 n.12. The court concluded, however, that the "PTO has the inherent, discretionary authority to withdraw an unauthorized terminal disclaimer, even though not specifically authorized by statute." A 16. The court further concluded that the PTO acted arbitrarily and capriciously in refusing to use that inherent, discretionary authority to withdraw the terminal disclaimer. A 19-20.

The district court acknowledged that, as a general matter, a client is bound by its attorney's actions, including gross errors, even if such errors harm the client's interests. A 9-10. But, analogizing to the rule in several jurisdictions that an attorney lacks apparent authority to settle a lawsuit, the district court declared that the submission of a terminal disclaimer waived rights "with respect to a [potentially] valuable asset" and is therefore a fundamental decision that cannot bind a client.

A 10-12. "[J]ust as an attorney cannot settle a case or waive a client's property or contract rights without actual authority, [JFCR's] counsel could not validly disclaim [the remaining patent term] without its actual authorization; the disclaimer's validity cannot issue from the implied, apparent authority of its counsel." A 12. The district court regarded as especially significant the fact that the terminal disclaimer of the '187 patent "was not legally required or necessary to comply with any legal obligation . . . in any on-going litigation or proceedings," nor was it filed "to avoid an obvious-type double patenting rejection and obtain the issuance of a patent." A 11. The court thus regarded the alleged error by JFCR's attorney of record as different in kind from litigation or patent-prosecution mistakes, including those in which an attorney files a disclaimer, which the court appeared to agree would bind a client. See A 11-12.

The district court rejected each of the PTO's reasons for declining to withdraw the terminal disclaimer. The court found no merit in the PTO's concern that the public has a right to rely on the public record of recorded terminal disclaimers. A 13. The district court disregarded such policy considerations as "unparticularized" and "not supported by any specific findings of institutional harms or prejudice to the public." *Ibid.* To the contrary, the court declared that "concerns based on the need to preserve the integrity of PTO's filing system would appear to push strongly in favor of a policy" of allowing patentees to withdraw disclaimers later alleged to have been filed by mistake. A 13. The court posited that "absent such a PTO policy,"

14

there would be "a cloud over the PTO's public record and the extent to which the public can, in fact, safely rely on it." A 13-14.

Similarly, the court rejected the PTO's explanation that, as a matter of administrative necessity, the PTO must be able to rely on the authority of attorneys to bind the clients they represent. The court found no support for the PTO's decision in "PTO's rules of practice," which govern when attorneys may sign filings and the effect of those signatures. See A 12 & n.9. The court further stated: "PTO made no factual findings in this regard, based on past requests or any other measure, and there is nothing in the administrative record that would support these claims." A 14. In the court's view, the PTO could simply conduct proceedings to determine whether a patentee's attorneys were in fact authorized to file a contested terminal disclaimer. Such proceedings, the district court asserted, would be "no different in substance or complexity" than other determinations that the PTO must make under the Patent Act. *Ibid.*

Finally, the district court rejected the argument that it was not the PTO's responsibility to correct errors made by JFCR's counsel. The court reasoned that the PTO plays a "gatekeeping role" with respect to patents and that "PTO is [JFCR's] only source of adequate relief." A 20. And it declared that JFCR's interest in mitigating the harm done by its attorney's allegedly-mistaken filing "outweigh[s]" the agency's stated concerns about "public reliance, the integrity of the filing system[,] and administrative convenience." A 15, 20-21.

15

The court thus set aside the PTO's decision and remanded to the agency with instructions "to withdraw the disclaimer . . . absent a finding that [JFCR] actually authorized its filing." A 3, 21, 24.

## SUMMARY OF ARGUMENT

The basic question in this appeal is whether PTO was required to rescue JFCR from the consequences of alleged errors by its own attorney of record. In October 2011, JFCR's attorney of record filed a terminal disclaimer surrendering the remaining term of the '187 patent. Because the disclaimer was filed in the appropriate form, was accompanied by the prescribed fee, and was signed by the patentee's counsel of record, the PTO accepted and recorded it. The terminal disclaimer thereby became "part of the original patent," and the '187 patent expired. 35 U.S.C. § 253. Months later, however, JFCR asked the PTO to withdraw the terminal disclaimer and revive the '187 patent, alleging that its attorney had been mistaken to file the disclaimer. The PTO declined to do so. But the district court set aside the PTO's decision and directed the agency "to withdraw the disclaimer . . . absent a finding that [JFCR] actually authorized its filing." A 3, 21, 24.

The district court's decision cannot stand. Whatever errors in communication or judgment may have caused JFCR's counsel of record to file the terminal disclaimer, those errors cannot be charged to the PTO or the public. The PTO provided ample reasons for refusing to take the extraordinary step of reviving the '187 patent— reasons that were only underscored by JFCR's unexplained delay in informing the

agency that it believed the terminal disclaimer had been filed by mistake. The district court identified no basis under the APA for setting aside that decision as arbitrary or capricious.

As the PTO explained, the agency has a long-established policy that patentees and patent applicants are bound by the acts of their duly appointed attorneys. PTO rules codify this policy and make clear that a terminal disclaimer may "[b]e signed by the patentee, *or* an attorney or agent record," 37 C.F.R. § 1.321(a)(1) (emphasis added). The agency's policy reflects both well-settled principles of agency law and a pragmatic judgment of administrative necessity. The PTO receives millions of submissions on behalf of patent applicants and patent holders each year, many of which bear directly on the scope, term, and validity of any patent that may ultimately issue. The PTO cannot realistically examine every submission for evidence of the attorney's actual authority. Nor can the PTO easily adjudicate allegations of attorney error after the fact or require the public to bear the risk that facially valid PTO records may later be nullified or withdrawn. For that reason, the PTO's rules provide that an attorney's signature will operate as a representation of the attorney's authority to act on the client's behalf. See 37 C.F.R. § 1.34. It was hardly irrational for the PTO to decline to waive that longstanding policy here. JFCR's remedy, if any, lies in an action for malpractice against the attorneys who caused its injury.

The PTO also explained that it would not exercise its discretion to withdraw the terminal disclaimer in this case for the independent reason that the disclaimer had

17

already been recorded in PTO files and the public was entitled to rely on the patentee's apparent abandonment of its patent rights. As the agency stressed, "upon filing, a proper disclaimer is of record" and "open to the public." A 998. The purpose of Section 253's recordation requirement is to provide the public clear notice of the date on which the patentee's exclusive rights will terminate. Although the district court expressed doubt that the public actually relied on the disclaimer in this case, the PTO reasonably concluded that the risk of that uncertainty should fall on JFCR rather than the public. It was not arbitrary or capricious for the PTO to refuse to restore to JFCR exclusive rights that the public was entitled to regard as abandoned.

The district court compounded its error under the APA by reweighing competing policy considerations and purporting to direct how PTO was to exercise its discretion on remand. See A 3, 21, 24 (directing the PTO "to withdraw the disclaimer . . . absent a finding that [JFCR] actually authorized its filing"). Substituting its own judgment for the PTO's, the district court crafted out of whole cloth a requirement that a terminal disclaimer alleged to have been filed by mistake must be withdrawn unless the PTO finds that the client actually authorized the filing. The court had no authority to require the PTO to apply such a rule, which the district court did not suggest is compelled by the Patent Act or any regulation. And the reasons that the district court offered for its preferred rule are unpersuasive on their own terms.

18

## STANDARD OF REVIEW

The district court's decision on summary judgment is reviewed *de novo*.  See

*Lacavera* v. *Dudas*, 441 F.3d 1380, 1382  (Fed. Cir. 2006).  The PTO's interpretation of

statutory provisions relating to the conduct of proceedings in the Patent Office is

binding so long as it is not foreclosed by the statute.  *See Cooper Techs. Co.* v. *Dudas*, 536

F.3d 1330, 1337-38 (Fed. Cir. 2008); *Bettcher Indus.* v. *Bunzl USA, Inc.*, 661 F.3d 629,

646 (Fed. Cir. 2011).   The PTO's "interpretation of its own regulations is entitled to

substantial deference and will be accepted unless it is plainly erroneous or inconsistent

with the regulation."  *Lacavera*, 441 F.3d at 1383 (internal quotation marks omitted).

## ARGUMENT

The district court ordered the PTO to take the extraordinary step of

withdrawing a recorded terminal disclaimer.  The court did so despite recognizing that

nothing in the Patent Act or PTO regulations expressly contemplates the withdrawal

of a recorded disclaimer, let alone *requires* the PTO to take that extraordinary step in

order to rescue a patentee from the consequences of its own attorneys' error.  The

PTO had ample reasons for refusing to revive the '187 patent—reasons that were

only underscored by JFCR's unexplained delay in informing the agency that it believed

the terminal disclaimer had been filed by mistake.  Because it was not arbitrary or

capricious for the PTO to decline to rescind the terminal disclaimer, the district court

erred in setting aside the PTO's decision.  And the district court compounded its error

by substituting its own policy judgment for the PTO's, and purporting to dictate how

19

PTO must exercise its discretion in the face of a contention that a patentee's attorney of record made an error in submitting a terminal disclaimer.

## A.    The PTO Had Ample Basis For Declining to Rescind Plaintiff's Terminal Disclaimer.

1.  It is undisputed that the PTO properly accepted and recorded the terminal disclaimer of the '187 patent when it was filed. The disclaimer was signed by JFCR's attorney of record; filed in the proper form with the prescribed fee; and included all of the information required under PTO regulations. The PTO thus accepted the terminal disclaimer, and it became "part of the original patent." 35 U.S.C. § 253. Under 35 U.S.C. § 253 and the agency's regulations, the PTO had no reason to do otherwise. At this point, the disclaimer was recorded and effective. See *Vectra Fitness, Inc.* v. *TNWK Corp.*, 162 F.3d 1379, 1382 (Fed. Cir. 1998) ("[N]othing in the statutes or regulations requires any action by the PTO for a disclaimer to be 'recorded.'").

Nothing in the Patent Act requires—or indeed, even contemplates—that the PTO will rescind a recorded terminal disclaimer at the behest of a patentee. See A 900-02 (JFCR request to withdraw disclaimer); A 936-37, 944 (JFCR request for reconsideration). This Court has recognized that Section 253 itself "does not include a mechanism for withdrawal or amendment of a terminal disclaimer." *Bayer AG* v. *Carlsbad Tech., Inc.*, 298 F.3d 1377, 1381 (Fed. Cir. 2002); see *Merck & Co., Inc.* v. *Hi-Tech Pharmacal Co., Inc.*, 482 F.3d 1317, 1323 (Fed. Cir. 2007); see also *Vectra Fitness,* 162 F.3d at 1384-85. This Court has also held that a patentee cannot "rescind [a]

terminal disclaimer through reissuance" under Section 251, insofar as a disclaimer means that the patent is treated as if the disclaimed term "never existed." *In re Yamazaki*, 702 F.3d 1327, 1329, 1332 (Fed. Cir. 2012); see also *Vectra Fitness,* 162 F.3d at 1382-85. This is so even though Section 251 "is remedial in nature, based on fundamental principles of equity and fairness," and even when prejudice was caused, in part, by errors in filing and processing. See *Yamazaki*, 702 F.3d at 1333. Similarly, although Section 255 provides that the Director "may" correct mistakes "of a clerical or typographical nature, or of minor character," that statute confers no general authority on the PTO to "correct" away a recorded terminal disclaimer, and in any event the authority conferred by Section 255 is explicitly discretionary.[3] The district court thus properly acknowledged that "neither Section 253 nor 255, separately or when read together," obligated PTO to rescind the terminal disclaimer at JFCR's request. A 15 n.12.

2. Because the PTO properly recorded the terminal disclaimer and no statute or regulation required the agency to withdraw it, any relief JFCR might obtain of the consequences of its attorneys' error lay wholly within the PTO's administrative discretion. Whatever discretion the agency may possess to withdraw a terminal

---

[3] As the PTO noted, Section 255 would appear to permit the correction of a terminal disclaimer that itself involved a clerical error—for example, if "the numbers of the patent being disclaimed . . . were inadvertently transposed." A 996 n.4. See, *e.g., Carnegie Mellon Univ.* v. *Schwartz,* 105 F.3d 863, 865 (3d Cir. 1997). No one contends that this case involves such a clerical error.

disclaimer in extraordinary circumstances, the PTO gave ample reasons for declining to do so here.[4]

This is an action under the Administrative Procedure Act.  When adjudicating an APA claim that an agency acted arbitrarily or capriciously, a court cannot set aside the agency's decision so long as there is a rational foundation for the agency's exercise of discretion.  See *Motor Vehicle Mfrs. Ass'n* v. *State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983).  The "standard is narrow and a court is not to substitute its judgment for that of the agency." *Id.* at 43.  If the statute does not dictate the agency's decision, the only question for the court is whether it "may reasonably be discerned" that the agency "examine[d] the relevant" information and identified "a rational connection between the facts found and the choice made." *Ibid*; see *FCC* v. *Fox Television Stations, Inc.*, 556 U.S. 502, 513-14 (2009); *Nat'l Ass'n of Home Builders* v.

---

[4] As a general matter, the PTO does not regard the recordation of terminal disclaimers under Section 253 as discretionary.  As the PTO observed in rejecting JFCR's request to withdraw the disclaimer here, see A 997, the agency does not examine a patentee's reasons for filing such a disclaimer, nor does it exercise any judgment in deciding whether to record it.  This Court has thus emphasized that a terminal disclaimer becomes effective automatically upon filing, without the need for any intervening exercise of discretion by PTO.  See *Vectra Fitness*, 162 F.3d at 1382 ("[N]othing in the statutes or regulations requires any action by the PTO for a disclaimer to be 'recorded'" within the meaning of Section 253).  The PTO agrees with the district court that, in extraordinary circumstances, the PTO may have the inherent administrative discretion to rescind or amend a terminal disclaimer when the Director concludes such steps are necessary to protect the integrity of the agency's processes.  For the reasons given by the PTO and discussed in the text, however, it was not irrational for the PTO to decline to exercise that extraordinary discretion here.

*Defenders of Wildlife*, 551 U.S. 644, 657-58 (2007); *Nat'l Org. of Veterans' Advocates, Inc.* v. *Sec'y of Veterans Affairs*, 669 F.3d 1340, 1348 (Fed. Cir. 2012).  Thus, when an agency declines to take a purely discretionary action for which Congress gave no guidelines, any rational explanation is sufficient.  Cf. *New York* v. *Nuclear Regulatory Comm'n,* 589 F.3d 551, 554 (2d Cir. 2009) (refusal to conduct rulemaking).

The PTO identified at least two compelling reasons for declining to rescue JFCR from the consequences of its own attorneys' error.  Either reason, taken alone, would be more than sufficient to support the agency's decision.  Together, they leave no doubt that the district court's order setting aside the PTO's decision must be reversed.

*First*, as the PTO explained, the agency has a long-established policy that when patentees and patent applicants act through their duly appointed attorneys, they are bound by their attorneys' filings.  See A 998-99.  The agency explained that, in PTO proceedings and in the federal courts alike, a party is generally "bound by the actions or inactions" of its attorney.  A 999 (citing *Link* v. *Wabash, R.R.,* 370 U.S. 626, 634 (1962)).  Rooted in basic principles of agency law and notions of apparent authority, this policy also reflects pragmatic judgments of administrative necessity in an agency that processes countless attorney-filed documents every year.

It is a well-established tenet of "our system of representative litigation [that] each party is deemed bound by the acts of his lawyer-agent."  *Irwin* v. *Dep't of Veterans Affairs*, 498 U.S. 89, 92 (1990) (quoting *Link*, 370 U.S. at 634) (internal quotation

23

marks omitted).  A party cannot "avoid the consequences of the acts or omissions of [its] freely selected agent." *Link*, 370 U.S. at 633-34.  This Court has thus expressly recognized, both in the patent context and in other contexts, that a client is bound by its attorney, even with respect to decisions directly affecting the client's interests.  See, *e.g., Super Sack Mfg. Corp.* v. *Chase Pckg. Corp.*, 57 F.3d 1054, 1059 (Fed. Cir. 1995) (promise made by patentee's attorney not to sue defendant was binding and patentee was "bound, both now and in the future, by its [attorney's] promise"); *Huston* v. *Ladner*, 973 F.2d 1564, 1566-67 (Fed. Cir. 1992) (rejecting the argument that a plaintiff "should not suffer the consequences of his attorney's acts" where plaintiff "did not knowingly and freely acquiesce in his attorney's conduct" because negligence by prior attorney was not "good cause" for failing to satisfy a PTO rule); *Whitaker* v. *MSPB*, 784 F.2d 1109, 1110 (Fed. Cir. 1986) (rejecting argument that the plaintiff "is not bound by the acts of his representative" when "he had not personally elected" the arbitration invoked by his representative).

The PTO's regulations and rules of practice for patent attorneys codify this principle.  The PTO regulations provide, for example, that a patent attorney's signature operates as a representation of his authority to file the document in question.  See, *e.g.,* 37 C.F.R. § 1.34.  And, specifically applicable here, the PTO rule governing terminal disclaimers states that a disclaimer may "[b]e signed by the patentee, *or* an attorney or agent of record," 37 C.F.R. § 1.321(a)(1) (emphasis added).

24

JFCR has repeatedly acknowledged that the attorney who signed the disclaimer was the "attorney of record acting in this matter on behalf of Patentee," JFCR. A 938.

The PTO has no practical alternative but to rely on this well-established policy for assurance that the agency may accept filings submitted by attorneys and patent agents without inquiring in each case into the attorney's actual authorization to act. The PTO receives *millions* of submissions by patent applicants and patent holders each year, many of which bear directly on patent scope, term, and validity.[5] The vast majority of those submissions are filed by attorneys: there are more than 31,000 attorneys who maintain active registrations to practice before the PTO.[6] Accordingly, to protect the public and to ensure the integrity of its own processes, the PTO supervises the patent bar, promulgates and enforces rules of professional conduct, and requires each attorney appearing in a representative capacity to warrant that he or she has the authority to act on behalf of the client represented. See, *e.g.,* 37 C.F.R. § 1.34. The PTO could not realistically function if it were nevertheless required to

---

[5] PTO receives more than half a million patent applications each year. See http://www.uspto.gov/web/offices/ac/ido/oeip/taf/us_stat.htm (last visited Jan. 23, 2013). As the Court knows, each of those applications involves voluminous communications between the applicant—represented, in most cases, by a patent attorney—and the agency throughout the process of examination and any related administrative appeals. Under settled principles of prosecution history estoppel, those communications may bind the patentee long after a patent issues. See generally *Festo Corp.* v. *Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722 (2002); *Phillips* v. *AWH Corp.,* 415 F.3d 1303 (Fed. Cir. 2005) (en banc).

[6] See generally https://oedci.uspto.gov/OEDCI/ (last visited Jan. 23, 2014).

examine every submission for evidence of the attorney's actual authority, lest the

patentee (like JFCR here) later claim that the attorney acted without authorization.

Nor can the PTO easily adjudicate allegations of attorney error after the fact or

impose on the public the risk that such error will cause the PTO later to nullify

facially valid filings.

Against this background, it was hardly irrational for the PTO to decline to

rescue JFCR from its own attorney's alleged error. JFCR's attorney of record in the

matter was the attorney who prosecuted the '187 patent and remained as counsel of

record to JFCR. The PTO was well within its discretion to decide that JFCR "cannot

now avoid the consequences of the acts or omissions of this freely selected agent."

*Link*, 370 U.S. at 633-34. The record does not indicate why an experienced and

sophisticated law firm would have filed a terminal disclaimer without express

authorization. Nor does the record indicate why the attorney would have done so on

the instructions of a foreign law firm representing a Japanese *licensee* of JFCR, which

appeared only to request information about how to disclaim the patent—without

checking with JFCR itself—as allegedly occurred here. See A 939-40, 967. Nor does

the record indicate why JFCR's first request to withdraw the terminal disclaimer did

not mention any alleged lack of authorization. See A 900-02. It was entirely rational

for PTO to conclude that the agency is "not the proper forum for resolving" such

questions. A 999. And it was not PTO's responsibility to resolve them. Cf.

*Environmentel, LLC* v. *FCC*, 661 F.3d 80, 82, 84-85 (D.C. Cir. 2011) (agency did not err

26

in refusing to reconsider its processing of a properly filed administrative application, notwithstanding a private dispute over the circumstances surrounding the application, because it was not the agency's responsibility to investigate such matters).

If the terminal disclaimer was indeed filed without authorization, JFCR's remedy is against the attorneys whose errors caused any injury. See *Link*, 370 U.S. at 634 n.10 ("[T]he client's remedy is against the attorney in a suit for malpractice."); *Singhal* v. *Mentor Graphics Corp.*, 328 F. App'x 648, 650 (Fed. Cir. 2009) (unpub.) (same); *Universal Film Exchanges, Inc.* v. *Lust*, 479 F.2d 573, 577 (4th Cir. 1973) (same). The district court erred in believing that it was PTO's responsibility to rescue JFCR from the consequences of that error.

*Second*, and in any event, the PTO explained that it would be inappropriate to withdraw the terminal disclaimer of the '187 patent because the disclaimer had been properly recorded. At that point, the public was entitled to rely on the patentee's apparent abandonment of its patent rights. The PTO emphasized that "upon filing, a proper disclaimer is of record" and "open to the public." A 998. The agency explained that it will "not determine on an *ad hoc* basis whether the public has actually relied on such filing." *Ibid.* Thus, even if it was unlikely that any member of the public had actually relied on the disclaimer, the agency concluded that public policy disfavored restoring to the patentee rights that had been dedicated to the public. See A 999-1000.

The district court identified no plausible basis for setting aside this reasoning as arbitrary or capricious. The court dismissed the PTO's concern for the public interest as "unparticularized" and "not supported by any specific findings of institutional harms or prejudice to the public." A 13. But it is not arbitrary for the PTO to conclude that a member of the public is entitled to rely upon a properly filed terminal disclaimer. And the PTO was not required to find that the public was *actually prejudiced* in order to refuse to exercise its discretion to withdraw the terminal disclaimer. JFCR sought discretionary relief from the agency, and it was both rational and appropriate for the PTO to conclude that taking the extraordinary step that JFCR sought— rescinding a facially valid disclaimer months after it had been recorded and made available for public inspection—could prejudice members of the public who were entitled to rely on it. Indeed, the very purpose of Section 253's recordation requirement is to protect the public—not the patentee—and provide the public clear notice of the date on which the patentee's exclusive rights will terminate. As this Court observed in a related context, to allow patentees to reclaim disclaimed exclusivity would "effectively render disclaimers a nullity" because "[t]he public could never rely" on disclaimers without risking later changes in the scope of exclusivity. See *Vectra Fitness*, 162 F.3d at 1384-85 (concluding that the public interest in reliance on PTO records militates against allowing the recapture of disclaimed subject matter through reissue proceedings); see also *In re Yamazaki*, 702 F.3d at 1332 (effect of terminal disclaimer is that the disclaimed period of exclusivity "never existed").

28

Even if it wished to do so, moreover, it is difficult to see how the PTO could determine whether any member of the public in fact relied on the disclaimer of the '187 patent. Although JFCR has asserted that it is "unlikely" that the public relied on the official record, the burden of that uncertainty should fall on JFCR, not on the public. Because it was not arbitrary or capricious for the PTO to refuse to restore to JFCR exclusive rights to which the public was now entitled to regard as abandoned, the district court erred in setting aside PTO's decision.

**B.     The District Court Erred By Requiring the PTO to Withdraw the Disclaimer Absent Proof of Actual Authorization.**

For the foregoing reasons, the district court erred in setting aside the PTO's decision under the APA. But the court did not merely set aside the PTO's decision. It also formulated its own preferred rule for PTO's administration of terminal disclaimers under Section 253 and ordered PTO to follow that judicially created rule. See A 3, 21, 24 (directing the agency "to withdraw the disclaimer . . . absent a finding that [JFCR] actually authorized its filing"). The district court had no authority to require the PTO to exercise its discretion in a manner not compelled by the Patent Act or applicable regulations. And the rationales that the district court offered for its rule are unpersuasive on their own terms.

1.     Absent an applicable statutory or regulatory requirement, a federal court may not compel an administrative agency to exercise its discretion in the manner preferred by the court. As the Supreme Court has emphasized, a federal court may

not compel an agency to take a particular action unless the agency has failed to discharge a specific and nondiscretionary duty—*i.e.,* unless the "action [is] legally *required*," see *Norton* v. *So. Utah Wilderness Alliance*, 542 U.S. 55, 63-65 (2004) (emphasis in original); *INS* v. *Ventura*, 537 U.S. 12, 16 (2002) (per curiam). Nor may a court specify the procedures that an administrative agency must follow when performing its statutory responsibilities. While "[a]gencies are free to grant additional procedural rights in the exercise of their discretion, . . . reviewing courts are generally not free to impose them if the agencies have not chosen to grant them." *Vermont Yankee Nuclear Power Corp.* v. *Natural Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978); see *Pension Benefit Guar. Corp.* v. *LTV Corp.*, 496 U.S. 633, 653-656 (1990); see also *Vermont Yankee*, 435 U.S. at 544 ("[T]he very basic tenet of administrative law [is] that agencies should be free to fashion their own rules of procedure."); *FCC* v. *Schreiber*, 381 U.S. 279, 289-91 (1965); *FCC* v. *Pottsville Broad. Co.*, 309 U.S. 134, 143 (1940). And although a court may review the legal sufficiency of an agency's reasons for a particular decision, a court may not "substitute its judgment for that of the agency." *State Farm Mut. Auto.*, 463 U.S. at 43; *Schreiber*, 381 U.S. at 290; see also *Ala. Aircraft Indus.* v. *United States*, 586 F.3d 1372, 1375-76 (Fed. Cir. 2009).

In this case, the district court did not simply conclude that the PTO's reasons for declining to withdraw the terminal disclaimer were inadequate. The court drew on its own views about sound public policy to formulate a rule for PTO's administration of the terminal disclaimer scheme and then ordered PTO to follow that judicially-

created rule: It directed the agency to withdraw the terminal disclaimer "absent a finding that [JFCR] actually authorized its filing." A 3, 21, 24. The court did not suggest that any statute or regulation compelled the PTO to exercise its discretion in that manner. Indeed, JFCR predicated its request for discretionary relief on the PTO's broad catch-all regulations for unanticipated situations. Those regulations— which provide that "situations not specifically provided for in the regulations of this part will be decided in accordance with the merits of each situation," 37 C.F.R. § 1.182, and that "any requirement of the regulations in this part which is not a requirement of the statutes may be suspended or waived" if "justice requires," 37 C.F.R. § 1.183—plainly do not establish the rule described by the district court.

The district court instead devised out of whole cloth a rule requiring PTO to withdraw any terminal disclaimer that a patentee later claims was filed by mistake "absent a finding that [the patentee] actually authorized its filing." In so doing, the district court disregarded fundamental principles of administrative law by substituting its own policy judgment for that of the agency. See, *e.g.,* A 10-12 (drawing on analogies to state laws on authority to settle litigation); A 13-14 (declaring that "the integrity of PTO's filing system" is better served if the PTO withdraws disclaimers later alleged to have been filed by mistake); A 14 (stating that PTO proceedings about attorney authorization would be "no different in substance or complexity" than other proceedings conducted by PTO); A 15, 20-21 (declaring that patentee's interest in disclaimed patent term outweighs competing policy concerns). Indeed, as Congress's

express grants of rulemaking authority to PTO make clear, see 35 U.S.C. § 2(b)(2)(A)
& (D), Congress delegated to the PTO the responsibility to determine how to conduct
its proceedings, how to regulate the patent bar, and how to balance the various
interests of patentees, the patent bar, the public, and the agency itself in the conduct
of PTO business.

If the district court believed that PTO did not offer a rational reason for its
decision or failed to consider relevant factors, the district court should have remanded
for PTO to do so. See *Ventura*, 537 U.S. at 16. But the court could not substitute its
views about the best way to balance the many competing interests here for those of
the agency. And it certainly could not craft a rule found nowhere in the statute or
regulations and direct the PTO to follow that rule.

2. The justifications that the district court offered for its preferred rule,
moreover, are unpersuasive. The court principally rested its decision on its view that
because patents are property rights, filing a terminal disclaimer is too "fundamental" a
step for an attorney's actions to bind the patentee. See A 10-12. Citing a handful of
cases stating that an attorney cannot settle a case without the client's actual authority,
the district court concluded that the same rule of agency law necessarily governs the
submission of a terminal disclaimer to the PTO. *Ibid.* This line of reasoning fails at
every turn.

As an initial matter, the analogy to common-law principles of agency law in
private settlements is simply inapt. Whatever the rule may be in general civil litigation

in particular jurisdictions, a federal agency must be entitled to determine how it will view filings by attorneys of record. Indeed, Congress expressly authorized the PTO to adopt rules governing the conduct of its own proceedings and to regulate the activities of attorneys representing clients before the agency, including by establishing a patent bar of attorneys who are able "to render to applicants or other persons valuable service, advice, and assistance in the presentation or prosecution of their applications or other business before the Office." 35 U.S.C. § 2(b)(2)(A) & (D). Congress thus recognized that in the realm of patent proceedings, questions would arise regarding when and how attorneys may represent parties before the PTO, and it expressly authorized the PTO to adopt rules to govern those relationships. Pursuant to that authority, the PTO has adopted rules specifying that an attorney's signature shall operate as a representation that the filing is authorized. See, *e.g.,* 37 C.F.R. § 1.34. Those rules make no exception for terminal disclaimers or for other "fundamental" matters. To the contrary, PTO's rule governing terminal disclaimers states that a terminal disclaimer may be signed either "by the patentee, *or an attorney or agent of record.*" 37 C.F.R. § 1.321 (emphasis added). The attorney who filed the disclaimer now at issue was JFCR's attorney of record. There was no reason to craft any exception here to PTO's longstanding policy.

A fundamental purpose of the PTO's longstanding policy is to avoid the uncertainty in common law principles of agency by specifying, clearly and in advance, that PTO will treat a filing by a patentee's counsel of record as authorized without

further inquiry. There is no question of the PTO's authority to adopt such rules. Cf. *Huston*, 973 F.2d at 1566-67 (party bound by "his attorney's acts" where party "did not knowingly and freely acquiesce in his attorney's conduct" because if attorney negligence were "good cause" for failing to satisfy a PTO rule, "the PTO's rules could become meaningless").

In any event, the district court's analogy to litigation settlements is unpersuasive on its own terms. This case does not involve the settlement of litigation, but the submission of a legal document to a federal agency on a client's behalf. It is commonplace in federal law that parties may be bound—sometimes to their serious detriment—by unauthorized representations made to the government by their attorneys of record. See, *e.g., Super Sack Mfg. Corp.*, 57 F.3d at 1059 (promise not to sue defendant). Indeed, although it did not explain why the distinction should matter, the district court itself appeared to contemplate that JFCR would have been bound by the disclaimer if it had been filed as part of litigation or to avoid a double-patenting rejection, see A 11-12—even though such scenarios concern the same property interests at issue here. And even as to litigation settlements, although many jurisdictions hold that attorneys lack apparent authority to bind clients to a settlement agreement, there is a divergence of views. See, *e.g., Fennel* v. *TLB Kent Co.*, 865 F.2d 498, 501-02 (2d Cir. 1989) ("[I]f an attorney has apparent authority to settle a case and opposing counsel has no reason to doubt that authority, the settlement will be upheld."); *Clark* v. *City of Zebulon*, 156 F.R.D. 684, 692 (N.D. Ga. 1993) ("It is clear

34

that under Georgia law, an attorney has apparent authority to enter into settlement agreements on behalf of his client."). Even assuming that the analogy to settling litigation is apt, the district court pointed to nothing in the Patent Act or any other statute that would require PTO to adopt its preferred rule.

Further, the district court was mistaken in positing that its rule would better promote the integrity of the patent system. For example, the district court's rule that the PTO must withdraw a disclaimer filed by a patentee's attorney of record by mistake would appear to apply regardless of how much time had passed or even whether there was clear and substantial reliance on a disclaimer. See A 12, 15. This is difficult to reconcile with the purpose of Section 253's recordation requirement, which is to provide the public clear notice of the date on which the patentee's exclusive rights will terminate. See also *Vectra Fitness*, 162 F.3d at 1384-85.

In rejecting the PTO's contention that the public should be entitled to rely on a recorded terminal disclaimer in the PTO's files, the district court declared that "concerns based on the need to preserve the integrity of the PTO's filing system would appear to push strongly in favor of a policy" of *withdrawing* unauthorized disclaimers. A 13. The court opined that, "absent such a PTO policy," there could be later "collateral proceedings" about the effectiveness of terminal disclaimers, reasoning that this would cast "a cloud over the PTO's public record and the extent to which the public can, in fact, safely rely on it." A 13-14. This gets matters exactly backward. It is for the PTO, not the district court, to determine which policies will

35

best promote the integrity of PTO procedures. And it is the district court's rule, not the PTO's, that would cast "a cloud over the PTO's public record and the extent to which the public can, in fact, safely rely on it." A 13-14. Under the district court's rule, the public could never rely on a facially valid terminal disclaimer to determine the expiration date of a patent, because it would always be open to the patentee to assert later that its attorney was not authorized to file the disclaimer. This would "effectively render disclaimers a nullity." See *Vectra Fitness*, 162 F.3d at 1384.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

NATHAN K. KELLEY
*Solicitor*

BENJAMIN T. HICKMAN
JEREMIAH S. HELM
*Associate Solicitors*
*Office of the Solicitor*
*U.S. Patent and Trademark Office*
*P.O. Box 1450*
*Alexandria, VA 22313*

STUART F. DELERY
*Assistant Attorney General*

DANA J. BOENTE
*Acting United States Attorney*

MARK R. FREEMAN
ADAM C. JED   s/ Adam Jed
*(202) 514-8280*
*Attorneys, Appellate Staff*
*Civil Division, Room 7240*
*U.S. Department of Justice*
*950 Pennsylvania Ave., N.W.*
*Washington, D.C. 20530*

JANUARY 2014

36

CASE PARTICIPANTS ONLY

# ADDENDUM

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| JAPANESE FOUNDATION FOR<br>CANCER RESEARCH | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:13-cv-412 |
| | ) | (AJT/TRJ) |
| | ) | |
| TERESA STANEK REA, Acting Under<br>Secretary of Commerce for Intellectual<br>Property and Acting Director of the United<br>States Patent and Trademark Office, | ) | |
| | ) | |
| UNITED STATES PATENT AND<br>TRADEMARK OFFICE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

On October 11, 2011, a terminal disclaimer of U.S. Patent No. 6,194,187 was filed with

the United States Patent and Trademark Office ("PTO") on behalf of the patent owner, plaintiff

Japanese Foundation for Cancer Research (the "Foundation").[1]  After the disclaimer was filed,

but before it was published on the PTO's website or in the PTO's *Official Gazette*, the

---

[1] Generally, the term of a patent is twenty years from the filing date of the patent application. 35
U.S.C. § 154(a)(2). A "terminal disclaimer" refers to a patentee's formally disclaimer, and
dedication to the public, of part of a patent term. Such disclaimers are generally used by patent
applicants to avoid what is referred to as an "obviousness-type double patenting" rejection by the
PTO based on "an 'obvious' modification of the same invention [already patented]." *In re
Longi*, 759 F.2d 887, 892-93 (Fed. Cir. 1985). A rejection on this basis is intended to protect the
public from an "unjustified timewise extension" of a patent. *Boehringer Ingelheim Intern.
GmbH v. Barr Lab., Inc.*, 592 F.3d 1340, 1347-48. (Fed. Cir. 2010).  To avoid such a rejection of
a new patent application, a terminal disclaimer will be filed as part of the new patent application,
with the result that the new patent will issue with a term that expires at the same time as the
earlier, already issued patent. *Id.*

# A1

Foundation requested that the PTO withdraw the disclaimer on the grounds that the Foundation

had never authorized its filing. The PTO denied the Foundation's repeated requests to withdraw

the terminal disclaimer, published it on its website (with a statement that it was being contested),

and ultimately issued its Final Agency Decision ("FAD") on February 12, 2013, denying the

Foundation's request. The PTO summarized its decision as follows:

> There is no dispute that pursuant to 35 U.S.C. [§] 253 and in compliance with 37 C.F.R.
> [§] 1.321(a), the disclaimer was filed in writing (with the required fee) by the assignee of
> the entire interest [the Foundation]. The [Foundation] disclaimed 'the entire term of all
> claims in Patent No. 6, 194, 187.' By this statement, [the Foundation] relinquished legal
> rights to all claims of this patent. By law, such disclaimer shall be recorded by the Office
> and is considered part of the original patent. Such disclaimer is binding upon the grantee
> and its successors or assigns.
>
> Patentee [the Foundation] seeks for the Office to invoke the discretion of the Director and
> to suspend the rules and withdraw the disclaimer. However, under the circumstances of
> the filing of this statutory disclaimer in a patented case, the office is without authority to
> return to patentee the freely disclaimed term of all claims in Patent No. 6, 194, 187.

Doc. No. 25-8, FAD at 4.

On April 1, 2013, the Foundation filed this action seeking to reverse the FAD under the

Administrative Procedure Act ("APA"), 5 U.S.C. § 551 on the grounds that the PTO's refusal to

allow withdrawal of the terminal disclaimer, under the particular circumstances of this case was

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5

U.S.C. 706(2)(A). Presently pending before the Court are the parties' cross motions for

summary judgment [Docs. No. 13, 22]. A hearing was held on those motions on May 10, 2013,

following which the Court took the motions under advisement.

The PTO does not contest or challenge in its FAD that the disclaimer was filed without the

Foundation's authorization.[2] The Court therefore concludes that the PTO: (1) erred as a matter

---

[2] While the PTO in its FAD does not dispute that the Foundation did not authorize the filing of
the disclaimer, it did not make any specific findings in that regard. Upon remand, the PTO will

# A 2

of law when it ruled that the Foundation was bound by an unauthorized filing of the terminal

disclaimer and refused for that reason to withdraw the unauthorized disclaimer; (2) erred as a

matter of law when it ruled that it was without inherent authority to withdraw the disclaimer

under the circumstance of this case; and (3) abused its discretion when it ruled that it would not

exercise any inherent authority it did have to withdraw the disclaimer. The Court will therefore

GRANT the Foundation's motion, DENY the PTO's motion, and direct the PTO to withdraw the

terminal disclaimer, absent a finding that the Foundation actually authorized its filing.

## I.    BACKGROUND

The Foundation is a non-profit entity, organized under the laws of Japan with its principal

place of business in Tokyo, Japan.  It was established in 1908 and was the first institute in Japan

specializing in cancer research.  Its work is funded, in part, through royalties collected from

licensing its intellectual property.

On February 27, 2001, a patent entitled "Aptosis-inducing protein and gene encoding the

same," U.S. Patent No. 6,194,187 (the "Cancer Treatment Patent"), was issued to its inventor

and assigned to the Foundation.  Doc. No. 25-3, 25-7.  The Cancer Treatment Patent was

scheduled to expire on April 17, 2017.  Doc. No. 25-3.  Following its issuance, the Foundation

licensed rights to practice it to two pharmaceutical companies, Kyowa Hakko Kirin, Inc.

("KHK") and Carna Biosciences ("Carna") (collectively the "licensees").  The Foundation did

not grant the licensees the right to disclaim the Cancer Treatment Patent, or any part of its term.

In 2011, KHK, one of the Foundation's licensees, acting through its in-house counsel,

called KHK's outside Japanese counsel, Kyowa Patent and Law Office ("Japanese Licensee

---

have the opportunity to make whatever inquiry it deems necessary to determine with respect to
the authorization *vel non* of the disclaimer's filing.

# A 3

Counsel),[3] and inquired generally about the process of filing a terminal disclaimer under United States patent laws. Doc. 25-8, Saito Decl. ¶ 5. Based on that conversation, Japanese Licensee counsel believed that KHK's in-house counsel had orally requested that a terminal disclaimer of the Cancer Treatment Patent be filed on behalf of the Foundation. Doc. 25-8, Kinoshita Decl. ¶¶ 3, 6. Japanese Licensee Counsel did not seek any formal, written request or confirmation from KHK and did not attempt to contact the Foundation. *Id.* ¶ 7. Instead, on March 9, 2011, Japanese Licensee Counsel sent a fax to the American law firm Foley & Lardner LLP ("U.S. Counsel), which served as the Foundation's attorney of record with the PTO, instructing it to "abandon the captioned patent positively and invalidate this patent before the case lapses by non-payment of the next maintenance fees, which will be due on August 27, 2012." Doc. No. 25-8 at 16.

On October 11, 2011, U.S. Counsel filed the terminal disclaimer with the PTO and forwarded a copy to Japanese Licensee Counsel. Doc. No. 25-7 at 170-71. Japanese Licensee Counsel forwarded a copy to KHK. On November 30, 2011, after receiving the copy of the terminal disclaimer, KHK's in-house patent counsel contacted Japanese Licensee Counsel and informed them that KHK had not requested the disclaimer. Doc. No. 25-8, Okubo Decl. ¶¶ 5-7. For these reasons, KHK instructed Japanese Licensee Counsel to take the necessary steps to withdraw the terminal disclaimer. *Id.* ¶ 10. On November 30, 2011, Japanese Licensee Counsel sent to U.S. Counsel a fax marked "EXTREMELY URGENT" requesting that U.S. Counsel take the proper steps to withdraw the disclaimer. U.S. Counsel proposed filing a petition to withdraw with the PTO and, on December 1, 2011, Japanese Licensee Counsel directed U.S. Counsel to

---

[3] Despite sharing the same first word—Kyowa—KHK and Japanese Licensee Counsel are not under common ownership or otherwise affiliated with one another.

prepare the petition. *Id.* ¶ 10. On December 9, 2011, U.S. Counsel sent Japanese Licensee Counsel a draft petition, which was approved on December 13, 2011. That same day, U.S. Counsel filed its first "Petition under 37 C.F.R. § 1.182 to Withdraw the Statutory Disclaimer." Doc. No. 257 at 176-78.[4]

After this first petition was filed, but before the PTO took any action on it, the PTO posted the terminal disclaimer on its internet website portal known as "PAIR", an acronym for Patent Application Information Retrieval, thereby making it electronically accessible to the public for the first time. Then, on January 17, 2012, the PTO dismissed the December 13, 2011, petition, essentially on the grounds that the PTO did not have statutory authority to withdraw the terminal disclaimer.[5] In response, U.S. Counsel filed a series of petitions on behalf of the Foundation, citing authority it believed demonstrated that the PTO had discretion to withdraw the disclaimer. The first of these subsequent petitions, filed on February 27, 2012, and styled

---

[4] 37 C.F.R. § 1.182 provides:

> All situations not specifically provided for in the regulations of this part will be decided in accordance with the merits of each situation by or under the authority of the Director, subject to such other requirements as may be imposed, and such decision will be communicated to the interested parties in writing. Any petition seeking a decision under this section must be accompanied by the petition fee set forth in § 1.17(f).

[5] In denying the Foundation's request, the PTO advised the Foundation as follows:

> [T]he policy of the Office is well established. The USPTO will not grant a request to withdraw or amend a recorded terminal disclaimer in an issued patent on the grounds that the rules of practice and 35 U.S.C. [§] 253 do not include a mechanism for withdrawal or amendment of such a terminal disclaimer.

Doc. No. 25-7 at 204-05.

**A 5**

"Petitions under 37 C.F.R. § 1.182 and § 1.183," sought to withhold the terminal disclaimer from publication in the *Official Gazette*.[6] Doc. No. 25-7 at 206-08.

The PTO did not respond to this petition, and on March 16, 2012, the Foundation filed an additional petition, together with sworn declarations, styled "Request for Reconsideration of Decision on Petition or, in the Alternative, Petition under 37 C.F.R. §§ 1.182 and 1.183 to Invoke the Discretion of the Director and Suspend the Rules." Doc. No. 25-7 at 209; *see also* Doc. No. 25-8 at 12-21. For several months, the PTO took no action with respect to these petitions. On August 7, 2012, U.S. Counsel met with the Director of the Office of Petitions and the attorney in that office assigned to the case. Doc. No. 25-8 at 24. Following that meeting, on August 30, 2012, U.S. Counsel filed a "Supplemental Petition for Reconsideration," requesting that the PTO exercise its inherent authority to set aside the "invalid" terminal disclaimer. *Id.* at 25-26.

Nearly six months later, on February 22, 2013, the PTO issued its FAD, in which it denied all of the Foundation's requests for relief and ordered publication of the terminal disclaimer in the *Official Gazette*. Doc. No. 25-8 at 40-50. On March 14, 2013, the Foundation filed a petition styled "Request to Withhold Recordation and Publication of the Notice of Unauthorized Disclaimer in the Official Gazette, Pending Judicial Review of the Agency's Decision, or in the Alternative, Petitions Under 37 C.F.R. §§ 1.182 and 1.183 to Invoke the Discretion of the Director and Suspend the Rules." On March 21, 2013, the PTO denied the Foundation's request not to publish the disclaimer in the Official Gazette, but later agreed to

---

[6] 37 C.F.R. § 1.183 provides:

> In an extraordinary situation, when justice requires, any requirement of the regulations in this part which is not a requirement of the statutes may be suspended or waived by the Director or the Director's designee....

preserve the status quo pending judicial review.[7] On April 1, 2013, the Foundation appealed the FAD pursuant to the APA.

## II.    Standard of Review

### A. Summary Judgment Standard

Summary judgment should be granted where the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S.317, 322 (1986). The non-moving party must go beyond the pleadings and mere allegations and "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 323. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson,* 477 U.S. at 247-248 (emphasis in original). Indeed, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

In an action brought under the APA there is no material fact at issue but only a question of law:

> When a party seeks review of agency action under the APA before a district court, the district judge sits as an appellate tribunal. The entire case on review is a

---

[7] After the PTO denied its request not to publish the disclaimer in the *Official Gazette,* the Foundation filed this action on April 1, 2013, and then on April 5, 2013, filed a Motion for Preliminary Injunction to Preserve the Status Quo Pending Judicial Review [Doc. No. 3]. Before the hearing scheduled on this motion, the parties reached an agreement on April 11, 2013 whereby the PTO agreed not to publish the terminal disclaimer as to the Cancer Treatment Patent in the *Official Gazette* unless and until the entry of final judgment in the PTO's favor in this action. *See* Doc. No. 8.

## A 7

question of law, and the complaint, properly read, actually presents no factual allegations, but rather only arguments about the legal conclusions to be drawn about the agency action.

*Klock v. Kappos,* 731 F. Supp. 2d 461, 465 (E.D. Va. 2010); *see also Rempfer v. Sharfstein,* 583

F.3d 860, 865 (D.C. Cir. 2009); *Marshall Cnty. Health Care Auth. V. Shalala,* 988 F.2d 1221,

1226 (D.C. Cir. 1993) ("[W]hen an agency action is challenged. . . the entire case on review is a

question of law.").

### B. Judicial Review under the Administrative Procedures Act

Under the APA, an agency action may be set aside if the court finds that action was

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.

706(2)(A). "The foregoing statutory criteria render our oversight 'highly deferential, with a

presumption in favor of finding the agency action valid,' yet the arbitrary-and-capricious

standard does not 'reduce judicial review to a rubber stamp of agency action.'" *Friends of Back*

*Bay v. Army Corps of Eng'rs,* 681 F.3d 581, 587 (4th Cir. 2012) (quoting *Ohio Valley Envtl.*

*Coal. v. Aracoma Coal Co.,* 556 F.3d 177, 192 (4th Cir. 2009)). "[T]he agency must examine

the relevant data and articulate a satisfactory explanation for its action including a 'rational

connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State*

*Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United*

*States,* 371 U.S. 156, 168 (1962)). "Normally, an agency rule would be arbitrary and capricious

if the agency has relied on factors which Congress has not intended it to consider, entirely failed

to consider an important aspect of the problem, offered an explanation for its decision that runs

counter to the evidence before the agency, or is so implausible that it could not be ascribed to

difference in view or the product of agency expertise." *Id.* The burden of showing the agency

action was arbitrary and capricious lies with the plaintiff. *See Ohio Valley Envtl.Coal.,* 556 F.3d

at 192. Questions of statutory interpretation, however, are reviewed *de novo. See., e.g., Superior*

8

*Fireplace Co. v. Majestic Products, Co.,* 270 F.3d 1358, 1369 (Fed. Cir. 2001); *Welch v. Chao,* 536 F.3d 269, 276 (4th Cir. 2008)( "Under the Administrative Procedure Act. . . [the Court] review[s] questions of law *de novo*.")

### III. Analysis

In the FAD, the PTO based its decision essentially on three grounds: (1) the Foundation was bound by its counsel's filing of the disclaimer; (2) the PTO lacked both statutory and inherent authority to withdraw the terminal disclaimer; and (3) even if the PTO had inherent authority, it would not exercise its discretionary inherent authority to permit withdrawal of a duly filed disclaimer. The Court reviews the PTO's first position as a matter of law. It also reviews as a matter of law whether the PTO has inherent authority to permit withdrawal of a disclaimer, but reviews under the APA's arbitrary and capricious/abuse of discretion standard its decision not to exercise any inherent authority it has. The Court will uphold the PTO's findings of fact, if supported by substantial evidence. *See Knox v. U.S. Dep't of Labor,* 434 F.3d 721, 723-24 (4th Cir. 2006).

### A. The PTO erred as a matter of law when it ruled that the Foundation was bound by the unauthorized filing of the terminal disclaimer.

At its core, the FAD rests upon the proposition that the Foundation is bound by its U.S. Counsel's filing of the disclaimer, regardless of whether or not it was authorized, intentional, or necessary, citing as authority *Link v. Wabash R. Co.,* 370 U.S. 626 (1962). *See* FAD at 8 ("The inquiry ended at the office when the disclaimer was filed by an attorney of record for an assignee of record."). In *Link,* the United States Supreme Court held that, notwithstanding the impact on the client, it was within the district court's discretion to dismiss a case for failure to prosecute where a lawyer, with notice of his obligation to attend a pre-trial conference, failed to attend in a case where it could be reasonably inferred that "the [plaintiff] has been deliberately proceeding

in a dilatory fashion." *Id.* at 633. Under the circumstances of that case, the Court found no merit

to the claim that dismissal of the client's case because of his counsel's unexcused conduct

"imposes an unjust penalty." *Id.* Here, the situation is quite different. The patent disclaimer

was not related to the prosecution of any patent applications or other legal proceedings

committed by the Foundation to its counsel. There was nothing that required the disclaimer to be

filed; and it was not filed for the usual purpose of avoiding or curing an "obvious-type" rejection

of an applied for patent. Rather, without any obligation to do so, and without the Foundation's

authorization, the Foundation's counsel filed a disclaimer that had the effect of nullifying the

Foundation's already issued and presumed valid patent.

It is generally recognized that, while clients are bound by the procedural, tactical or case

management decisions of their counsel, clients are not bound by the unauthorized acts of their

counsel concerning decisions pertaining to their fundamental rights over which they retain final

and sole authority. These issues include such matters as whether to file suit, dismiss an action,

release claims and settle a dispute. The scope of their authority to act solely by virtue of their

representation simply does not extend to such matters. *See Auvil v. Grafton Homes, Inc.,* 92 F.3d

226, 230 (4th Cir. 1996) (holding there is no implied authority on the part of an attorney to settle

a case, even where an attorney is authorized to conduct settlement negotiations and on that basis

vacating settlement agreement where attorney settled a lawsuit without the actual authority of the

client); *see also Sioux Tribe of Indians v. United States*, 862 F.2d 275, 279-80 (Fed, Cir. 1988)

(recognizing the rule that a client is not bound by an unauthorized settlement but holding that a

"stipulation of facts," on the basis of which the Court entered its judgment was "not a settlement

agreement which required the consent of the [client][,]" but rather "exactly the type of

determination (*i.e.,* analysis of the evidence) that attorney can undertake 'as part of the normal

# A 10

conduct of litigation without the necessity for obtaining the approval of their client.'"); *Snyder-Falkinham v. Stockburger,* 249 Va. 376, 381 (1995) ("An attorney at law, merely by virtue of being retained by the client, has no authority to compromise the client's claim without the latter's consent."). *See generally,* Restatement (Third) of Law Governing Lawyers, § 22 (Rule applies to settlements and "comparable decisions").[8]

The terminal disclaimer filed with respect to the Foundation's Cancer Treatment Patent essentially waived and released the Foundation's legal rights and entitlements with respect to a valuable asset. It effectively eliminated and destroyed the Foundation's property rights. *See Connell v. Sears, Roebuck & Co.,* 722 F.2d 1542, 1548(Fed. Cir. 1983) ("[A] patent is a form of property right, and the right to exclude recognized in a patent is but the essence of the concept of property.") (citing *Schnenck v. Norton Corp.,* 713 F.2d 782 (Fed, Cir. 1983)). In its effect, a disclaimer is comparable to a legal release, waiver or forfeiture. It also inflicted a harm, *viz.,* the loss of the patent's exclusionary benefits, generally considered not adequately compensable with damages and irreparable absent its enforcement through equitable relief. *See, e.g., Douglas Dynamics, LLC v. Buyers Prods. Co.,* 717 F.3d 1336, 1345 (Fed.Cir. 2013). Here, its filing was not legally required or necessary to comply with any legal obligation of the Foundation or its counsel in any on-going litigation or proceedings. Nor was it filed, as it usually is, to avoid an obvious-type double patenting rejection and obtain the issuance of a patent. For these reasons, counsel's conduct in this case is fundamentally different from an attorney's failure to prosecute a

---

[8] Section 22 provides in pertinent part:

(1) As between client and lawyer. . . the following and comparable decisions are reserved to the client except when the client validly authorized the lawyer to make the particular decision: whether and on what terms to settle…" Comment *e* to Section 22, *comparable decisions,* states that "the principles applicable to settlements also apply to significant contracts outside the litigation context, for example contracts to sell the client's real estate. A client may authorize a lawyer to act in such matters, but otherwise the lawyer lacks authority."

case in violation of court imposed duties and obligations, or even the authorized filing of a disclaimer that turns out to be mistaken in some aspect. It was beyond the scope of any authority U.S. Counsel had as a result of his representation of the Foundation before the PTO; and just as an attorney cannot settle a case or waive a client's property or contract rights without actual authority, the Foundation's counsel could not validly disclaim the Foundation's Cancer Treatment Patent without its actual authorization; the disclaimer's validity cannot issue from the implied, apparent authority of its counsel. For these reasons, the PTO acted contrary to law when in the face of sworn declarations establishing that the disclaimer was filed without the Foundation's actual authorization, concluded that the Foundation was nevertheless bound by its counsel's conduct and on that basis, ended its inquiry into the Foundation's request for withdrawal of the disclaimer once it determined that the disclaimer was filed by the Foundation's counsel of record. In fact, based on this administrative record, once the PTO satisfied itself that the disclaimer was in fact filed without the Foundation's authorization, its inquiry should have ended in favor of withdrawing the disclaimer.

The Court can discern no reason why this generally recognized rule protecting the Foundation's fundamental rights and expectations should not apply within the context of the PTO. In particular, the Court finds nothing in the PTO's rules of practice[9] or its various

---

[9] 37 C.F.R. § 1.34, pertaining to patent counsel, does not support any other result. Under that regulation:

> When a patent practitioner acting in a representative capacity appears in person or signs a paper in practice before the United States Patent and Trademark Office in a patent case, his or her personal signature shall constitute a representation to the United States Patent and Trademark Office that . . . he or she is authorized to represent the particular party on whose behalf he or she acts. In filing such a paper, the patent practitioner must set forth his or her registration number, is or her name and signature. Further proof of authority to act in a representative capacity may be required.

concerns and considerations mentioned in the FAD that would justify nullifying the Foundation's patent under the circumstances of this case. For example, the PTO's general, unparticularized concerns and considerations pertaining to the public's right to rely on the public record are not supported by any specific findings of institutional harms or prejudice to the public.[10] The FAD also ignores that the rights, if any, of someone who has relied on the disclaimer before its withdrawal can be appropriately considered and protected within the context of infringement litigation. *See Carnegie Mellon University v. Schwartz*, 105 F.2d 863, 867 (3d Cir. 1997) (where the Court observed that the legal effect of a disclaimer the PTO's had erroneously filed and then "deleted" over 15 months later and then again "corrected" nearly five years later could be decided in the patent infringement litigation pertaining to the disclaimed patent).[11] Moreover, concerns based on the need to preserve the integrity of the PTO's filing system would appear to push strongly in favor of a policy that unauthorized, patent eliminating disclaimers will be purged from the public record. As shown in *Carnegie Mellon*, the legal effect of an unauthorized disclaimer will likely be challenged in collateral proceedings; and absent such a PTO policy, the

---

Nothing in this regulation can be read to say that anything a counsel of record files will be conclusively deemed to have been filed with actual authority. In fact, the above rule states only that it will be presumed that counsel is authorized to "represent" a party. It says nothing about what conduct will be deemed to be within counsel's scope of authority based on that representation. If it says anything in that regard, the rule appears to contemplate that an attorney may only act with actual authority. ("Further proof of authority [of an attorney of record] to act in a representative capacity may be required.").

[10] In terms of harm to the public, the PTO concedes that there is no evidence of any actual reliance on the disclaimer and the only publication of the disclaimer beyond the public filing itself was through PAIRS on its website, accompanied by a notice that the validity of the disclaimer was under review. The prospects that someone has actually reasonable relied on the disclaimer are therefore minimal.

[11] In *Carnegie Mellon*, the PTO took the position that its Erratum and Certificate of Correction operated retroactively to cure the erroneous disclaimer that it had filed, such that alleged infringers of the disclaimed patent had not acquired any intervening rights. *See id.* at 865-86.

13

# A 13

possibility that unauthorized disclaimers may remain on the public record with the PTO's knowledge or approval would surely place a cloud over the PTO's public record and the extent to which the public can, in fact, safely rely on it.

Nor can the PTO's administrative necessity or convenience concerns justify depriving the Foundation of its patent based on the unauthorized disclaimer. In this regard, the PTO claims that withdrawing the disclaimer in this case would lead to an influx of similar requests that would overtax its resources. *See* Def. Br. at 18 (If the PTO permitted the withdrawal of a disclaimer, "[a] party could attempt to nullify a patent filing merely by alleging that the filing was unauthorized, and agency personnel would be required to expend their resources investigating the motives and intent of the patentee when it made the disputed filing."). But again, the PTO made no factual findings in this regard, based on past requests or any other measure, and there is nothing in the administrative record that would support these claims, particularly since terminal disclaimers are generally filed purposefully to avoid an "obviousness-type double patenting" rejection. *See In re Longi*, 759 F.2d at 892-93. *See Universal Camera Corp. v. N.L.R.B*, 340 U.S. 474, 463 (1951) (courts do not have to defer to agency findings of facts that are not supported by substantial evidence). There is also nothing in the administrative record that supports the PTO's claim in this Court that it does not have the institutional competence to consider the Foundation's request on the merits, which raises issues no different in substance or complexity than other issues that may confront the PTO under statutes and regulations it is charged with administering. *See, e.g.*, 35 U.S.C. § 253 (requiring that the filing party have no "deceptive intention"); 37 C.F.R. § 1.183 (authorizing the Director to act "as justice requires").

# A 14

Lastly, the PTO's reliance on public policy cannot overcome the Foundation's rights to its patent absent an authorized disclaimer. Here, the Foundation is not seeking to recapture something that it "freely dedicated to the public." The disclaimer was filed without the Foundation's authorization and there is no evidence of any bad faith or fraud on its part in connection with the filing. Once it learned of the unauthorized filing, the Foundation acted expeditiously under the circumstances to undo it and in fact placed the PTO on notice of the unauthorized filing before the PTO took any action to publish the disclaimer through its website. In summary, nothing the PTO relied upon in the FAD would trump or outweigh the harm inflicted on the Foundation by the unauthorized filing.

## B. The PTO has the authority to withdraw the disclaimer.

The PTO denied the Foundation's request to withdraw the disclaimer on the grounds that it did not have either statutory or inherent authority to do so and even if it did have such authority, withdrawal was not warranted under the circumstances of this case. The Court concludes that the PTO had inherent, discretionary authority to withdraw the unauthorized disclaimer and it abused its discretion when it refused to do so.[12]

---

[12] The Court agrees with the PTO that neither Section 253 nor 255, separately or when read together, explicitly authorize the PTO to withdraw the unauthorized disclaimer. Section 253 provides no basis for relief since that section simply authorizes the filing of a partial or total disclaimer, with no mention of any right to withdraw a disclaimer or any procedure for requesting its withdrawal. *See Bayer AG v. Carlsbad Tech.*, 298 F.3d 1377 (Fed. Cir. 2002) ("Section 253, which permits filing of a terminal disclaimer and 'dedication to the public' of the terminal part of the term, does not include a mechanism for withdrawal or amendment of a terminal disclaimer."); *see also Merck & Co., Inc. v. Hi-Tech Pharmacal Co., Inc.*, 482 F.3d 1317 (Fed. Cir. 2007) ("[W]e held in *Bayer* that a terminal disclaimer could not be withdrawn."). Section 255 does authorize a corrective filing, but only for "mistake[s] of a clerical or typographical nature, or of minor character." 35 U.S.C. § 253. An unauthorized filing of a terminal disclaimer cannot be reasonably characterized as a "clerical" mistake since it was in proper form and filed with respect to the intended patent. For the same reasons, its filing was not a "typographical" mistake. Nor was it of "minor character" given its legal effect on the enforceability of the patent. The Foundation argues that Section 255 is analogous to Fed. R. Civ.

# A 15

The PTO takes the position that because it has no explicit statutory authority to withdraw the disclaimer, it has no inherent authority to withdraw a terminal disclaimer, citing *Bayer AG* and *Merck & Co., Inc.* for the proposition that a terminal disclaimer may *never* be withdrawn. *See id.* at 10 ("[T]he [PTO] will not grant a request to withdraw or amend a recorded terminal disclaimer in an issued patent on the grounds that the rules of practice and 35 U.S.C. [§] 253 do not include a mechanism for withdrawal nor amendment of such a terminal disclaimer. . . ."). The Court concludes, as a matter of law, that the PTO has the inherent, discretionary authority to withdraw an unauthorized terminal disclaimer, even though not specifically authorized by statute.

"Whenever a question concerning administrative, or judicial, reconsideration arises, two opposing policies immediately demand recognition: the desirability of finality, on the one hand, and the public interest in reaching what ultimately appears to be the right result on the other." *Civil Aeronautics Bd. v. Delta Airlines, Inc.*, 367 U.S. 316, 321 (1961). The exercise of inherent authority "is often the sole means of correcting errors of procedure or substance." *Bookman,* 453 F.2d at 1265. *See also Macktal v. Chao,* 286 F.3d 822, 825 -26 (5th Cir. 2002) ("[I]t is generally accepted that in the absence of a specific statutory limitation, an administrative agency has the inherent authority to reconsider its decisions.") (cited with approval in *Tokyo Kikai Seisakusho, Ltd. v. U.S.*, 529 F.3d 1352 at 1360 (Fed Cir. 2008)).

---

P 60(b), which permits relief from a final judgment, order, or proceeding to correct errors resulting from "mistake, inadvertence, surprise, or excusable neglect" or "any other reason that justifies relief." Fed. R. Civ. P. 60(b). The substantial differences between Rule 60(b) and Section 255 are clear on the face of these provisions. The Court does agree, however, with the Foundation's position that nothing in these statutes prohibits the withdrawal of unauthorized disclaimers.

16

# A 16

Section 253 authorizes a patentee or patent applicant to disclaim "the entire term, or any terminal part therein of the patent granted or to be granted."[13] The PTO's regulations prescribe the procedure for utilizing this statutory authorization.[14] Although the patentee does not have to justify its filing of a disclaimer under this regulatory scheme and the PTO does not screen or specifically authorize the filing of a disclaimer, the PTO nevertheless actually receives any filings authorized by Section 253 and controls placing them on the public record. Under these circumstances, the PTO has the inherent authority to reconsider whether it should have filed, or allowed the filing, of a disclaimer and to withdraw from the public record an unauthorized terminal disclaimer.[15] *See Tokyo Kikai Seisakusho, Ltd.,* 529 F.3d at 1360 ("The power to

---

[13] At all material times herein, Section 253 provided:

> Whenever, without any deceptive intention, a claim of a patent is invalid the remaining claims shall not thereby be rendered invalid. A patentee, whether of the whole or any sectional interest therein, may, on payment of the fee required by law, make disclaimer of any complete claim, stating therein the extent of his interest in such patent. Such disclaimer shall be in writing, and recorded in the Patent and Trademark Office; and it shall thereafter be considered as part of the original patent to the extent of the interest possessed by the disclaimant and by those claiming under him.

> In like manner any patentee or applicant may disclaim or dedicate to the public the entire term, or any terminal part therein, of the patent granted or to be granted.

[14] A valid disclaimer must: (1) be signed by the patentee or an attorney or agent of record; (2) identify the patent and the complete claim or claims, or term being disclaimed; (3) state the extent of the patentee's ownership interest in the patent; and (4) be accompanied by the required fee. *See* 37 C.F.R. § 1.321(a).

[15] During the hearing held in this case, the PTO appeared to concede that it has inherent discretionary authority to withdraw a fraudulently filed disclaimer but not an unauthorized one. The significance to the PTO of the difference between the two is not clear, particularly since the filing of an unauthorized disclaimer can involve conduct akin, in substance, to constructive fraud. *See Henderson v. Henderson,* 255 Va. 122, 495 S.E. 2d 496, 499 (1998) (constructive fraud consists of "proof that a false representation of a material fact was made, innocently or negligently, and that the injured party suffered damage as a result of his reliance on the misrepresentation.") Here, because the filing of a disclaimer requires actual authority in order to

reconsider is inherent in the power to decide."). That conclusion is underscored by the need to

ensure the integrity of the public record and considerations of justice, fairness and equity

reflected in the PTO's regulations and rules of practice, which recognize the PTO's residual

authority to act in situations not specifically addressed under its explicit statutory and regulatory

authority. *See* 37 C.F.R §1.182 (the director may address those situations not specifically

provided for in the regulations, according to their merit); *id.* at § 1.183 (the director is authorized

to act in "an extraordinary situation" where "justice requires" the director to afford relief);

Manual of Patent Examining Procedure ("MPEP") § 1490 ("Under appropriate circumstances,

the nullification of a terminal disclaimer may be addressed by filing a petition under 37 C.F.R. §

1.182 requesting withdrawal of the recorded disclaimer.").[16]

The PTO argues that it is precluded from exercising its inherent authority because "that

authority does not encompass powers that run contrary to the statutory authorizations granted to

USPTO in the Patent Act, and neither § 253 nor § 255 indicate a power to revoke or nullify a

filed terminal disclaimer on the ground of attorney mistake or negligence." Def. Br. at 28.

Neither Section 253 or 255 prohibits the PTO from withdrawing from the public record an

---

bind the patentee, the unauthorized filing of a disclaimer could be viewed as an implied
misrepresentation pertaining to the filer's actual authority.

[16] The PTO's position that it has no discretion in this case also appears to conflict with its
position and actions in other cases and situations. For example, in other litigation in this Court,
the PTO recently took the position, at least implicitly, that it does have the ability to consider and
allow in its discretion the withdrawal of a disclaimer. *See President & Fellows of Harvard Coll.
v. Rea,* 1:12-cv-1034, 2013 WL 2152635, at *2 (E.D. Va. May 15, 2013) ("The [PTO] noted that
Harvard had never attempted to withdraw the disclaimer, so it remains part of the official, public
administrative record of the Parent Patent."). In addition, the PTO reviews and vacates *inter
partes* reexaminations, despite the plain language of the statute, which makes the initial
determination "final and non-appealable." 35 US.C. § 312(c); *see also* MPEP § 2246 ("A
petition under 37 C.F.R. § 1.181 may, however, be filed to vacate an *ultra vires* reexamination
order, such as where the order for reexamination is not based on prior art patents and printed
publications."). Likewise in *Carnegie Mellon,* the PTO effectively withdrew a disclaimer that it
had mistakenly filed. 105 F.2d at 867.

# A 18

unauthorized disclaimer that it has placed on the public record pursuant to Section 253.  Neither

section therefore necessarily precludes relief in this case; and there is nothing necessarily

inconsistent about the PTO's withdrawal of an unauthorized disclaimer under the circumstances

of this case and the statutory and regulatory authorizations that do exist.  In sum, the PTO is

charged with placing on the public record certain disclaimers, it has through regulation

prescribed the requirements for its placing a disclaimer on the public record, and its decision to

withdraw a disclaimer that it placed on the public record would not conflict with any statutory

prohibition.  For these reasons, the Court concludes as a matter of law that the PTO has inherent

discretionary authority to withdraw the unauthorized terminal disclaimer pertaining to the Cancer

Treatment Patent.

### C. The PTO's refusal to withdraw the terminal disclaimer was arbitrary, capricious and an abuse of discretion.

Although it recognized it was presented with an "extraordinary situation," the PTO

justified its refusal to exercise any inherent authority it might have on two grounds.  First, it

reasoned that since it made no substantive decision to enter or not enter the disclaimer, "there is

no decision to reconsider."  FAD at 7.[17]  Second, the PTO ruled that in any event "the

---

[17] The FAD stated in support of this position:

> Patentee cannot point to a determination (on the merits) that the Office made that should
> be reconsidered. The extraordinary situation now described on [the Foundation's] petition
> bore no weight on the entry of the disclaimer.  No substantive review of this disclaimer
> was undertaken [by the PTO]. No gathering of information or reviewing of evidence
> occurred [by the PTO]. No decision was made was made with respect to the merits of the
> entry of the disclaimer.  It is noted that the question of whether the disclaimer was filed
> by a proper party and the question of whether assignee authorized the party to file the
> disclaimer are distinct questions. As the patentee's filing met the standard of being filed
> by a proper party and including the required fee, the office accepted the disclaimer for
> recording as requested.

*Id.* at 7.

19

# A 19

circumstances of the filing of the disclaimer in this patent does not warrant withdrawal or nullification of the patent." *Id.* at 8. Neither of these reasons "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *State Farm,* 463 U.S. at 43.

With respect to its first grounds, the PTO essentially takes the view that since it did not create or contribute to the Foundation's problem, it had no responsibility to fix it once it determined that the disclaimer was filed by the Foundation's counsel of record. That position ignores that the Foundation is not bound by an unauthorized disclaimer and that the PTO is the Foundation's only source of adequate relief. It also fails to recognize the central, gatekeeping role that the PTO does play with respect to the public record. In short, the PTO cannot responsibly cast itself as a total stranger to the Foundation's predicament and its efforts to reverse the nullification of its patent.

Nor does the PTO's established policy against withdrawing a recorded patent disclaimer in certain circumstances, as described in its FAD, justify its refusal to do so in this case. The disclaimer's withdrawal in this case will not lengthen the original term of the Cancer Treatment Patent when it issued. There is no evidence that the policy has ever been applied previously to the unauthorized filing of disclaimer and there is nothing to suggest that the policy, when formulated, was ever intended to apply to the extraordinary situation in this case. Finally, for the reasons previously stated, the PTO's other concerns and considerations pertaining to public reliance, the integrity of the filing system and administrative convenience and necessity do not constitute sufficient justification for refusing to withdraw the unauthorized disclaimer of the Foundation's Cancer Treatment Patent. For these reasons, the Court concludes that the PTO

20

**A 20**

abused its discretion when it refused to withdraw the terminal disclaimer of the Cancer Treatment Patent.

### c. CONCLUSION

The PTO was presented with the extraordinary circumstance of a patentee threatened with the loss of its patent because of the unauthorized filing of a disclaimer. In refusing to withdraw the unauthorized disclaimer, the PTO acted based on an erroneous legal view concerning the extent to which the Foundation was bound by its counsel's conduct and made no factual findings that would justify not withdrawing that unauthorized filing based on any particularized harm or prejudice to the PTO's institutional interests or the public interest. Nor can the Court find any such justification based on the administrative record.

For these reasons, the Court concludes that the PTO did not act in accordance with law, acted arbitrarily and capriciously, and abused its discretion when it refused to withdraw the terminal disclaimer of the Foundation's Cancer Treatment Patent for the reasons set forth in the FAD. Accordingly, the Plaintiff's Motion for Summary Judgment [Doc. No. 13] is GRANTED and the Defendant's Cross Motion for Summary Judgment [Doc. No. 22] is DENIED. The Court will therefore reverse the FAD and direct the PTO to withdraw the disclaimer of the Foundation's Cancer Treatment Patent, absent a finding that the Foundation actually authorized its filing; and this matter will be remanded to the PTO for further proceedings consistent with this Memorandum Opinion.

An appropriate Order will issue.

_____
/s/
Anthony J. Trenga

Alexandria, Virginia
July 26, 2013

**A 22**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JAPANESE FOUNDATION FOR )
CANCER RESEARCH )
                                  )
       Plaintiff, )
       v. )                Civil Action No. 1:13-cv-412
                                  )                (AJT/TRJ)
                                  )
TERESA STANEK REA, Acting Under )
Secretary of Commerce for Intellectual )
Property and Acting Director of the United )
States Patent and Trademark Office, )
                                  )
UNITED STATES PATENT AND )
TRADEMARK OFFICE, )
                                  )
       Defendants. )
_____)

## ORDER

     This matter is before the Court on The Cancer Foundation's Motion for Summary

Judgment [Doc. No. 13] and the Defendants' Cross-Motion for Summary Judgment [Doc. No.

22]. Upon consideration of the Motions, the memorandum and exhibits filed in support thereof

and in opposition thereto, and the argument of counsel at a hearing held on May 10, 2013, and

for the reasons stated in the accompanying Memorandum Opinion, it is hereby

     ORDERED that the Cancer Foundation's Motion for Summary Judgment [Doc. No. 13]

be, and the same hereby is, GRANTED; and it is further

     ORDERED that the Defendants' Cross-Motion for Summary Judgment [Doc. No. 22] be,

and the same hereby is, DENIED; and it is further

# A 23

ORDERED that the Final Agency Decision of the United States Patent and Trademark Office ("USPTO") issued February 22, 2013 with respect to U.S. Patent No. 6,194,187 be, and the same hereby is, REVERSED and this case REMANDED to the USPTO for further proceedings; and it is further

ORDERED that upon remand the USPTO is directed to withdraw from the public record the terminal disclaimer filed with respect to U.S. Patent No. 6,194,187, absent a finding that the plaintiff authorized its filing; and to conduct such other proceedings consistent with this ORDER and Memorandum Opinion.

The Clerk is directed to send a copy of this Order to counsel of record.

/s/

Anthony J. Trenga
United States District Judge

Alexandria, Virginia
July 26, 2013

**A 24**

**CERTIFICATE OF COMPLIANCE WITH
FEDERAL RULE OF APPELLATE PROCEDURE 32(A)**

I hereby certify that this brief complies with the requirements of Fed. R. App.

P. 32(a)(5) and (6) because it has been prepared in 14-point Garamond, a

proportionally spaced font.  I further certify that this brief complies with the type-

volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 9,375 words,

excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the

count of Microsoft Word 2010.

*s/ Adam Jed*
Adam C. Jed

# CERTIFICATE OF SERVICE

I certify that on January 23, 2014, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system.  The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*s/ Adam Jed*
Adam C. Jed